IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AVA MARIA McMAHON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 3:06-0011 ) JUDGE CAMPBELL/KNOWLES ) |
| BRIDGESTONE FIRESTONE, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket Entry No. 25. Along with that Motion, Defendant has contemporaneously submitted a supporting Memorandum of Law (Docket Entry No. 26), a Statement of Undisputed Material Facts (Docket Entry No. 27), excerpts of the Deposition of Ava Maria McMahon ("Plaintiff's Dep.") with Exhibits (Docket Entry No. 28-3), and the Declaration of Donice Pierce ("Pierce Decl.") with Exhibits (Docket Entry No. 28-4).

Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts.

Plaintiff filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), alleging sex discrimination in the termination of her employment with Defendant. *See* Docket Entry Nos. 1 and 2. Specifically,

1

Plaintiff avers that, "There is a male employee with [Defendant] who in 2003 received pay types and over payments that he wasn't eligible for. Even after this was discovered he was neither disciplined or [*sic*] terminated." *Id.* Plaintiff states that when "payroll over paid him they took the funds back from his account." *Id.* Plaintiff argues that she was discriminated against because she was "not given the same consideration as a male employee regarding overpayments" because Defendant "didn't go into [her] account and remove the funds as they did with the male employee." *Id.* Plaintiff seeks reinstatement to the "same position when termination took place," back pay "retro to date of termination," and "monetary compensation for violation of civil rights." *Id.*

Defendant filed an Answer denying liability on May 1, 2006. Docket Entry No. 20.

Defendant filed the instant Motion for Summary Judgment and accompanying submissions on September 15, 2006. Docket Entry Nos. 25-28. Defendant argues that "Plaintiff's claim fails as a matter of law because she can neither establish a *prima facie* case of sex discrimination nor demonstrate that [Defendant's] reason for discharging her - her undisputed fraud and theft - was merely a pretext for sex discrimination."[1]  Docket Entry No. 26.

---

[1] Defendant additionally argues that Plaintiff is judicially estopped from pursuing her claim because she did not disclose it in her bankruptcy proceeding. Docket Entry No. 26, p. 14-16. Defendant maintains that Plaintiff's response of "none" to Questions 4 ("List all suits and administrative proceedings to which [she] is or was a party within one year immediately preceding the filing of [her] bankruptcy case") and 20 ("List other contingent and unliquidated claims of every nature") of her Voluntary Petition for Chapter 13 bankruptcy preclude her from proceeding with this action because she electronically signed separate verifications under penalty of perjury that her responses were true and correct, when, in fact, she had filed her EEOC Charge of Discrimination six months prior. *Id.* Although Plaintiff admits that she never told her bankruptcy attorney about her claim against Defendant, Plaintiff attempts to blame the misrepresentations on her attorney. *See* Plaintiff's Dep., pp. 261-262, 265, 268. It is unnecessary for the Court to fully address this argument, however, because the undisputed facts demonstrate that Plaintiff cannot establish her prima facie claim of sex discrimination.

(Italics original.) Specifically, Defendant argues that Plaintiff cannot demonstrate that she was replaced by a male or was treated less favorably than a similarly situated male. *Id.*

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II.  Undisputed Facts[2]

Plaintiff was employed by Defendant at its LaVergne, Tennessee tire manufacturing plant from April 19, 2000 until September 13, 2004. Plaintiff's Dep., pp. 48, Ex. 9. Plaintiff was a bargaining unit employee and member of the United Steelworkers of America, Local 1055L. *Id.* at 46-49. Her employment was governed by a collective bargaining agreement between Defendant and the Union. *Id.* Plaintiff held a variety of job positions, ultimately working in the Warehouse department as a fork truck operator, or "trucker." *Id.* at 48-50.

After sustaining a workplace injury, Plaintiff's physician placed on her permanent medical restrictions that, as written, precluded her from performing her own job duties or those of any other job in the plant for which she was eligible, based on her seniority per the collective bargaining agreement.[3] Plaintiff's Dep., pp. 54-59, 63-64. As a result, Plaintiff took a medical layoff from February 2004 until on or about July 29, 2004. *Id.* at 89-90, 98-99. Plaintiff applied for, and received, unemployment compensation from the Employment Security Division of the Tennessee Department of Labor during the entire period of her medical layoff. *Id.* at 90-91, 102.

---

[2]Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

[3] Plaintiff's physician subsequently modified her restrictions and Plaintiff was able to return to work in a suitable position. Plaintiff's Dep., pp. 55, 100, 102-103.
3

When an employee who has at least two years of seniority is off work and receiving state unemployment compensation system benefits, the collective bargaining agreement provides that Defendant will pay that employee a weekly amount which, when added to the state system benefit, totals eighty percent of the employee's "average weekly wage." Plaintiff's Dep., pp. 91-93, Ex. 2. In order to bring Plaintiff to the requisite eighty percent threshold, Defendant paid Plaintiff supplemental benefits of $635.87 per week. *Id*. at 120-126, Exs. 3-6. The supplemental benefit payments are automatic after the initial payment is set up and are thereafter triggered by the employee's receipt of state unemployment system benefits. *Id.,* Ex. 2; Pierce Decl., ¶ 4.

After returning to work, Plaintiff telephoned the state unemployment office on at least three occasions and falsely reported that she was not working, so that she could continue to receive unemployment benefits. Plaintiff's Dep., pp. 98-99, 201-202. The receipt of those unemployment benefits triggered additional weekly supplemental benefit payments from Defendant of $635.87. *Id.* at Ex. 2; Pierce Decl. ¶¶ 4, 6. Plaintiff received three supplemental benefits payments of $635.87 each after returning to work. Plaintiff's Dep., pp. 117-126, Exs. 3-6. Plaintiff admits that she was not entitled to receive at least one of those payments.[4] *Id.* at 117-118, 124, 126-127, Exs. 5, 6.

On Friday, September 3, 2004, Plaintiff received her pay stub and noticed the supplemental benefits payment of $635.87. She knew that she was not entitled to receive that supplemental payment. Plaintiff's Dep., pp. 133-135. Plaintiff, however, did not report receipt

---

[4] Plaintiff argues that she was entitled to receive two of the supplemental benefits payments, but does not dispute that she was not entitled to the third supplemental benefits payment. *See* Plaintiff's Dep., pp. 117-118, 124, 126-127, Exs. 5, 6.

4

of that benefits payment to her supervisor or anyone in Defendant's human resources department. *Id.* at 136-140.

Plaintiff did not notify anyone at the Union about receiving the supplemental benefits payment. Plaintiff's Dep., pp. 142-143.

Plaintiff went to work on September 4, 2004, and reported to the plant on-site health unit for an alleged injury to her foot. Plaintiff's Dep., pp. 140-142. Plaintiff did not say anything to anyone there about receiving the supplemental benefits payment. *Id.*

On September 7, 2004, after Defendant discovered Plaintiff's fraud, Defendant's Labor Relations Specialist, Missy Cortez, contacted the Union and scheduled an investigatory meeting with Plaintiff and her Union representatives. Pierce Decl, ¶ 7; Plaintiff's Dep., pp. 145-146. Plaintiff's Union representatives telephoned her and requested that she meet them at the plant. *Id.*

At the meeting on September 7, 2004, Ms. Cortez confronted Plaintiff and Plaintiff admitted to lying to the Tennessee unemployment office in order to continue to receive supplemental benefits after she had returned to work. Plaintiff's Dep., p. 150-151. Plaintiff acknowledged that she had not made any effort to contact Defendant, or leave them a message, regarding receipt of the benefits payment. *Id.* at 146-147.

After the meeting on September 7, 2004, Defendant scheduled a "cooling off" period of two days, as required by the collective bargaining agreement. Pierce Decl., ¶ 8. Ultimately, Ms. Cortez decided to discharge Plaintiff for violation of Defendant's falsification / theft policy, which provides: "Falsification of any document and or theft will result in discharge." Pierce Decl. ¶ 10, Ex. 1; Plaintiff's Dep., Exs. 9, 10.

5

Case 3:06-cv-00011   Document 29   Filed 02/05/07   Page 5 of 14 PageID #: 311

Ms. Cortez decided to discharge Plaintiff after considering:

> 1. a handwritten letter from Plaintiff attempting to "justify" her now known conduct (*Id.*; Plaintiff's Dep., pp. 157-159, 174-175, Ex. 8);
>
> 2. the fact that Plaintiff lied to the Tennessee unemployment office and fraudulently obtained at least three unemployment payments to which she was not entitled (Plaintiff's Dep., pp. 98-99, 200-202);
>
> 3. the fact that Plaintiff's fraud caused Defendant to make at least one unentitled benefits payment of $635.87 to Plaintiff (*Id.* at 162-163, 200-202);
>
> 4. the fact that Plaintiff claimed that she "did not know" that her fraudulent unemployment benefits would cause Defendant to issue corresponding benefits payments, which claim appeared inconsistent with Plaintiff's immediate contact to Defendant, shortly after beginning medical layoff, to protest that her supplemental benefits payments had not started simultaneously with her unemployment benefits (*Id.* at 127-128, Ex. 13);
>
> 5. the fact that Plaintiff was "flagged" on September 2, 2004, after checking her bank account, and confirmed upon receiving her pay stub at work on September 3, 2004, that she had been overpaid the supplemental benefits pay (*Id.* at 173-174, Ex. 8)[5]; and
>
> 6. the fact that in the five days between when she received the supplemental benefits payment and when Ms. Cortez confronted her (September 2 to September 7), Plaintiff made no effort to report the overpayment caused by her fraud, which she admitted that she knew was incorrect, to Defendant (*Id.* at 140-147; Pierce Decl. ¶ 9).

(Footnote added.)

Plaintiff filed a collective bargaining agreement grievance through her Union protesting her discharge. Plaintiff's Dep., pp. 190-191. Her grievance went to arbitration, during which

---

[5]It is unclear from the record how checking her bank account "flagged" Plaintiff, but Plaintiff so testified. *See* Plaintiff's Dep., pp. 173-174.

both sides were given a full opportunity to present their respective cases. *Id.*, *Id.* at 194. At her arbitration, Plaintiff argued that she had defrauded only the state, not Defendant. *Id.* at 194, Ex. 13. The arbitrator rejected Plaintiff's argument, concluded that Defendant had met its burden under the collective bargaining agreement of showing "just cause" to terminate Plaintiff's employment, and upheld Plaintiff's discharge. *Id.* at 199-200, Ex. 13.

The trucking position that Plaintiff held at the time of her termination was not individual or unique. Pierce Decl., ¶ 12. Several employees at any given time hold that position. *Id.* In September 2004, the group of employees who held trucking positions included several females and several males. *Id.*

Because of the requirements of the collective bargaining agreement, Defendant could not simply place an employee in a trucking or similar bargaining unit position at its discretion or preference. Pierce Decl., ¶ 12. No one was hired to replace Plaintiff after her discharge. *Id.*

The sole evidence upon which Plaintiff relies to connect the discharge decision to her gender is her asserted comparison of herself to a male employee, Anthony Tigg, who she admits "didn't do anything affirmatively, to [her] knowledge, to get himself overpaid." Plaintiff's Dep., pp. 214-217, 221-222. Plaintiff also admits that she is not aware of any misrepresentation by Mr. Tigg to anyone. *Id.* Plaintiff acknowledges that she cannot point to any facts that indicate that Ms. Cortez was aware at any relevant time that Mr. Tigg had been overpaid. *Id.* at 223.

Plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission on February 23, 2005. Plaintiff's Dep., Ex. 16.

7

## III. Analysis

### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than ten (10) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty (20) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

As has been noted, Defendant filed the pending Motion on September 15, 2006. Docket Entry No. 25. Plaintiff has failed to respond to Defendant's Motion. Pursuant to Local Rule 7.01(b), Plaintiff's failure to file a timely response "indicate[s] that there is no opposition to the motion."

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...
> . . .
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has likewise failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted

8

facts are not disputed for the purposes of summary judgment." Accordingly, there are no disputed facts in the case at bar. Because this case presents no disputed facts, there is no genuine issue as to any material fact, and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for Summary Judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

9

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 2000e**

Title VII of the Civil Rights Act of 1964 protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer–
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

10

> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A prima facie claim of discrimination under Title VII requires a Plaintiff to establish the following:

1. He or she is a member of a protected class;

2. He or she was qualified for the job and performed it satisfactorily;

3. Despite his or her qualifications and performance, he or she suffered an adverse employment action; and

4. He or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as

11

later clarified by *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### D. The Case at Bar

Plaintiff avers that Defendant discriminated against her on account of her gender when her employment was terminated. Docket Entry No. 1.

Although Plaintiff asserts in her Complaint that Defendant discriminated against her because of her gender, she has failed to adduce *any* affirmative evidence, in a form required by Fed. R. Civ. P. 56, to support those allegations. As discussed above, Plaintiff has not responded to the instant Motion and Plaintiff has not submitted *any* evidence in a form required by Fed. R. Civ. P. 56 to support her claims. Plaintiff bears the burden of demonstrating that there is a genuine issue for trial. Plaintiff has failed to do so. Because Plaintiff has offered no evidence

12

whatsoever concerning her claims of discrimination, she has not demonstrated either that she was replaced by a male or that she was treated differently than a similarly situated male, and she cannot establish her prima facie claim. Accordingly, Defendant is entitled to a judgment as a matter of law.

Even if Plaintiff could establish a prima facie case of discrimination with regard to her termination, Plaintiff cannot demonstrate that Defendant's articulated legitimate non-discriminatory reason for terminating Plaintiff, namely her admitted wrongdoing with regard to the supplemental benefits payment, was pretextual. As discussed above, it is undisputed that Plaintiff knowingly received, did not report, and kept, at least one supplemental benefits payment to which she was not entitled.

Under these circumstances, and on the basis of the undisputed facts in this case that are in a form required by Fed. R. Civ. P. 56, the undersigned concludes that no rational fact finder could conclude that Plaintiff's termination was discriminatory. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133,148 (2000) ("an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision....").

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that there is no genuine issue as to any material fact, and that Defendant is entitled to a judgment as a matter of law. Therefore, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket Entry No. 25) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

_____
E. CLIFTON KNOWLES
United States Magistrate Judge